1

**LAW OFFICE OF GEORGE T. SMITHWICK**
**TIMOTHY SMITHWICK SBN 88087**

2

18 Crow Canyon Ct., Ste. 380p
San Ramon, CA 94 583

3

(925) 837-1717; (FAX) (925) 648-2032
e-mail: tsmithwick@gtslaw.net

4

Attorney for Plaintiff

5

**CRAIG OHLENDORF**

6

7

**UNITED STATES DISTRICT COURT**

8

**EASTERN DISTRICT OF CALIFORNIA**

9

10

CRAIG OHLENDORF

**CASE NO. 2:09-CV-02081-LKK-EFB**

11

                    Plaintiff,

**SECOND AMENDED COMPLAINT**
**FOR:**

12

v.

13

AMERICAN HOME MORTGAGE
SERVICING, INC.; AMERICAN

**1. FRAUD**
**2. BREACH OF CONTRACT**

14

BROKERS CONDUIT; T.D. SERVICE
COMPANY; AHMSI DEFAULT

**3. BREACH OF IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR**

15

SERVICES, INC.; DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS

**DEALING**
**4. VIOLATION OF CALIFORNIA**

16

TRUSTEE FOR HARBORVIEW
MORTGAGE LOAN TRUST MORTGAGE

**ROSENTHAL ACT**
**5. NEGLIGENCE**

17

LOAN PASS-THROUGH
CERTIFICATES, SERIES 2007-5;

**6. BREACH OF FIDUCIARY DUTY**
**7. VIOLATIONS OF BUSINESS &**

18

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; NOVO

**PROFESSIONS CODE § 17200 et seq.**
**8. VIOLATION OF CIVIL CODE §**

19

MORTGAGE; JUVON REALTY, INC.;
JUVON FINANCIAL, INC.; KIRK

**2923.5 et seq.**
**9. QUIET TITLE**

20

BERNARD DECLARK; JASON
ANTHONY YOUNGS; KEN JENOBI;

21

ANTHONY ALFANO; and DOES 1-20
inclusive,

**DEMAND FOR JURY TRIAL**

22

                    Defendants.

23

_____/

24

25

26

27

28

COME NOW Plaintiff CRAIG OHLENDORF ("Plaintiff"), by and through his counsel, for his Complaint against Defendants AMERICAN HOME MORTGAGE SERVICING, INC. ("AHMSI"), AMERICAN BROKERS CONDUIT ("ABC"), T.D. SERVICE COMPANY ("T.D."), AHMSI DEFAULT SERVICES, INC. ("AHMSIDS"), DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2007-5 ("DEUTSCHE"), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), NOVO MORTGAGE ("NOVO"), JUVON REALTY, INC. ("JUVON"), JUVON FINANCIAL, INC. ("JUVON FINANIAL"), KIRK BERNARD DECLARK ("DECLARK"), JASON ANTHONY YOUNGS ("YOUNGS"), KEN JENOBI ("JENOBI"), and ANTHONY ALFANO ("ALFANO") (collectively "Defendants"), pleads as follows:

**JURISDICTION AND VENUE**

1.      This is an action asserting violations of California State Law. These claims all arise out of the same controversy and sequence of events.

2.      Venue is proper in this Court in that a substantial part of the events giving rise to the claim occurred in Placer County.

3.      This Courthas personal jurisdiction over the parties as all Defendants engage in business within the State of California and Placer County.

4.      Defendants, and each of them, regularly engage in business in the State of California, County of Placer and regularly provide mortgage loans and related services to residents in the State of California, County of Placer who wish to obtain a mortgage loan, and who contact or are contacted by a loan officer for assistance in obtaining the necessary financing.

5.      Plaintiff bring this action against Defendants for damages and harm resulting from the Defendants' negligent, fraudulent, and unlawful conduct concerning a residential mortgage loan transaction with the Plaintiff.  The residential mortgage concerned the property located at 795 Quartz Mine Road, New Castle, County of Placer, State of California.

**PARTIES**

6.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned

1   in this Complaint, Defendant AHMSI, is a diversified services corporation engaged primarily in

2   residential mortgage loan servicing. Defendant AHMSI has represented to Plaintiff that it has the

3   right to service Plaintiff's residential mortgage loan and demand payments from Plaintiff, a

4   representation Plaintiff deny.  Plaintiff is informed and believes, and thereon alleges that at all

5   times mentioned in this Complaint, Defendant AHMSI, is a Texas corporation regularly

6   conducting business in the state of California.

7        7.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned

8   in this Complaint, Defendant ABC is a diversified financial marketing and/or services

9   corporation engaged primarily in residential mortgage banking and/or related businesses.

10  Defendant ABC is believed to be a residential mortgage lender and was original lender for

11  Plaintiff's residential mortgage loan.  Plaintiff is informed and believes, and thereon alleges that

12  at all times mentioned in this Complaint, Defendant ABC is a New York corporation regularly

13  conducting business in the state of California.

14       8.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned

15  in this Complaint, Defendant MERS, is a diversified financial marketing and/or services

16  corporation engaged primarily in residential mortgage banking and/or related businesses.

17  Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this

18  Complaint, Defendant MERS is a Delaware corporation regularly conducting business in the

19  state of California.

20       9.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned

21  in this Complaint, Defendant DEUTSCHE, is a diversified financial services corporation

22  engaged primarily in residential foreclosure and/or related businesses and has represented to

23  Plaintiff that it has the right to foreclose on the mortgage in question, a representation Plaintiff

24  deny.  Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this

25  Complaint, Defendant DEUTSCHE, is a corporation regularly conducting business in the state of

26  California.

27       10.       Plaintiff is informed and believes, and thereon alleges that at all times

28  mentioned in this Complaint, Defendant T.D. is a diversified financial services corporation

engaged primarily in residential foreclosure and/or related businesses and has represented to

Plaintiff that it has the right to foreclose on the mortgage in question, a representation Plaintiff

deny.  Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this

Complaint, Defendant T.D. is a corporation regularly conducting business in the state of

California.

        11.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned

in this Complaint, Defendant AHMSIDS is a diversified financial services corporation engaged

primarily in residential foreclosure and/or related businesses and has represented to Plaintiff that

it has the right to foreclose on the mortgage in question, a representation Plaintiff deny.  Plaintiff

is informed and believes, and thereon alleges that at all times mentioned in this Complaint,

Defendant AHMSIDS is a Texas corporation regularly conducting business in the state of

California.

        12.    Defendant MERS is a Delaware corporation engaged in the business of holding

title to mortgages.  It does business in California as evidenced by inclusion of its name on the

Deed of Trust.  At the time of this residential mortgage loan, Defendant MERS was not

registered to do business in California.  The Deed of Trust in this case states:

> "MERS is a separate corporation that is acting solely as a nominee
> for Lender and Lender's successors and assigns.  MERS is the beneficiary
> under this Security Instrument.  MERS is organized and exists under the
> laws of Delaware..."

> "The beneficiary of this security instrument is MERS (solely as
> nominee for Lender and Lender's successors and assigns) and the
> successors and assigns of MERS.  This security instrument secures
> to Lender (I) repayment of the Loan and all renewals, extensions
> and modifications of the Note; and (ii) the performance of
> Borrower's covenants and agreements under this Security
> Instrument and Note.  For this purpose, the Borrower irrevocably
> grants and conveys to Trustee, in trust, with power of sale the
> following described property.

        13.    Defendant MERS' conduct, with respect to the Promissory Note and the Deed of

Trust in this case, is governed by "MERS Terms and Conditions" applicable to Defendants which

state that:

> "MERS shall serve as mortgagee of record with respect to all such
> mortgage loans solely as a nominee, in an administrative capacity,
> for the beneficial owner or owners thereof from time to time.

1
2
3
4
5

> MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law."

6   14.    As a result of said express conditions, and pursuant to California Commercial

7   Code §§ 1201(21), 3301, and 3309, Defendant MERS has no beneficial interest or right to

8   enforce the terms of the Promissory Note, and, because it is not in possession of the Promissory

9   Note, and has no authority to conduct a non-judicial foreclosure sale.

10   15.    Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS,

11   JENOBI, and ALFANO sold Plaintiff the mortgage involved herein.  Plaintiff is informed and

12   believes, and thereon alleges that at all times mentioned in this Complaint, Defendants

13   DECLARK, YOUNGS, JENOBI, and ALFANO were residences the state of California.

14   16.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned

15   in this Complaint, Defendant NOVO, JUVON, and JUVON FINANCIAL were engaged in the

16   business of residential mortgage lending and related services.  Defendant NOVO, JUVON,

17   JUVON FINANCIAL are California Corporation regularly doing business in the State of

18   California.

19   17.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned

20   in this Complaint, Defendant ALFANO was the loan officer who sold Plaintiff the mortgage at

21   issue.  Defendant ALFANO held himself out to Plaintiff as a loan officer employed by Defendant

22   NOVO, JUVON, JUVON FINANCIAL, and was acting within the course and scope of that

23   employment when he came into contact with Plaintiff and sold Plaintiff the mortgage at issue.

24   Though Defendant ALFANO held himself out to be a loan officer, there is no record of him ever

25   being licensed by the California Department of Real Estate.

26   18.    At all times mentioned in this First Amended Complaint, Defendant YOUNGS

27   was a real estate Broker licensed by the State of California Department of Real Estate, and the

28   Broker of record for Defendants JUVON and JUVON FINANCIAL.  Though Defendant JONOBI

1    held himself out to be a an employee and/or agent of Defendants JUVON and JUVON

2    FINANCIAL, there is no record of him ever being licensed by the California Department of Real

3    Estate.

4       19.    At all times mentioned in this Complaint, Defendant DECLARK, YOUNGS, and

5    JENOBI were a real estate Brokers licensed by the State of California Department of Real Estate,

6    and the Brokers of record for Defendant NOVO, JUVON, JUVON FINANCIAL.

7       20.    At all times mentioned in this Complaint, Defendant DECLARK, YOUNGS, and

8    JENOBI were a real estate Brokers licensed by the State of California Department of Real Estate,

9    and the Brokers of record for Defendant NOVO, JUVON, JUVON FINANCIAL.

10      21.    At all times mentioned in this Complaint, Defendant NOVO, JUVON, JUVON

11    FINANCIAL was a California diversified financial marketing company engaged primarily in

12    mortgage brokering and/or related business.  Defendant NOVO, JUVON, JUVON FINANCIAL is

13    believed to have been the residential mortgage broker for Plaintiff's residential mortgage loan.

14      22.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein

15    under the fictitious names Does 1 through 20, inclusive, and Plaintiff will amend this Complaint

16    to allege such names and capacities as soon as they are ascertained.  Each of said fictitiously

17    named Defendants is responsible in some manner for the wrongful acts complained of herein.

18      23.    Defendants, and each of them, at all relevant times herein were and still are agents

19    for one another, and acting under the course and scope thereof, with knowledge and consent of

20    each other.

21                  **GENERAL ALLEGATIONS**

22      24.    This action arises out of a loan related activity to the Property of which the Plaintiff

23    is the rightful owner.

24      25.    Beginning in 1998 and continuing through 2009, lenders, including Defendant

25    ABC, their agents, employees, and related servicers, including Defendants AHMSI, and MERS,

26    developed a scheme to rapidly infuse capital into the home mortgage lending system by selling

27    mortgages on the secondary market, normally three to five times, to create a bankruptcy remote

28    transaction.  For there to be a bankruptcy remote transaction, there must be a true sale of the note

and no interest can remain in the seller of the note.

26.    In a typical transaction, the original lender, called "Originator", in this case Defendant ABC would immediately upon closing, enter the loan into Defendant MERS system, then sell the loan to their "Warehouse Lender".  The "Warehouse Lender" in this case is not known to Plaintiff.  Since these transactions are hidden and not recorded, Plaintiff will only be able to discover the name of the "Warehouse Lender" through Discovery.

27.    The loan would then be sold by the "Warehouse Lender" to a "Special Investment Vehicle" ("SIV").  The SIV would then sell the loan to a "Depositor".  Depositor would in turn pool these mortgages into large trusts, securitizing the pool and selling these securities on Wall Street as mortgage backed securities, bonds, derivatives, and insurances, often for twenty or thirty times the original mortgage and sometimes fraudulently selling the same mortgage to multiple investors.

28.    This securitized trust is governed by the common law trust rules of Delaware or New York, depending on its origin, the prospectus filed with the Securities and Exchange Commission and distributed to investors, and Internal Revenue Code § 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

29.    The servicing of the pool is governed by a document titled "Pooling and Servicing Agreement" ("PSA").  Plaintiff is informed and believes, and thereon alleges, that the REMIC rules, the PSA and the prospectus require the notes and deeds of trust to be received by the trustee on or before the closing date of the trust.

30.    Plaintiff's mortgage note is a negotiable instrument under the Uniform Commercial Code Article 3 and California Commercial Code § 3301 et seq.  To transfer ownership of a mortgage note, it must be properly endorsed by a person with authority to endorse the note, physical delivery of the note and acceptance of the note.

31.    Plaintiff is informed and believes, and there on alleges that the mortgage note which is the subject of this action was not received by the trustee of the securitized trust at all, and certainly not within a specified number of days of the trust's formation.

32.    Plaintiff is informed and believes and there on alleges that the mortgage note and

deed of trust, immediately after closing and recording, was entered into Defendant MERS and the original note was destroyed or warehoused, but not transferred, assigned or negotiated.  This resulted in the stripping and voiding of the security interest in the note and no interest was ever transferred to the trust.

33.     In "selling" these mortgage notes on the secondary market, Defendant ABC, along with the Warehouse Lender, Sponsor, Depositor, and Defendant MERS, failed to follow the basic legal requirements for the transfer of a negotiable instrument and an interest in real property, including, but not limited to, written assignments of Plaintiff's Deed of Trust, delivery of the Deed of Trust, endorsements of Plaintiff's Note by the owner of Plaintiff's Note, delivery of Plaintiff's Note and acceptance of Plaintiff's Note.

34.     In fact, no interest in Plaintiff's Mortgage Note, Deed of Trust or Property was ever legally transferred to any of the parties in the chain and that the Defendants are in effect straw men, and parties without any standing before this Court to assert legal rights with respect to this contractual transaction.

35.     Defendant AHMSI thus could not have legally been given the right to service Plaintiff's Loan.  Accordingly, Plaintiff alleges Defendant AHMSI representations to Plaintiff that it has the right to service Plaintiff's Loan was, and is, fraudulent and, Defendant AHMSI, knowingly and fraudulently entered this information into the Defendant MERS system.

36.     Defendants T.D., AHMSIDS, and DEUTSCHE, as agent for Defendant AHMSI or other Doe Defendants, due to the failures noted above, was not legally entitled to initiate foreclosure proceedings against Plaintiff's Property and knew it was not legally entitled to initiate foreclosure proceedings.

37.     Further, as this process became more and more profitable, the underwriting requirements were repeatedly reduced to ensure more and more unsuspecting borrowers.  As Defendant ABC reduced the underwriting requirements, it introduced the concept of "churning" loans involving a calculated plan to repeatedly refinance borrowers' loans taking as much equity as possible, and artificially driving up housing prices.

38.     In this case, Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK,

YOUNGS, and JENOBI, in concert with Defendant ABC, placed Plaintiff into a predatory loan with toxic terms, as detailed below, with the ultimate objective of forcing Plaintiff to refinance his loan in the near future for each of these named Defendants' financial gain.

39.     Unlike the former traditional lending practices prior to the loan securitization process, Defendant ABC profited from the sale of the loans, not from the loan investment itself. The intent of these "Lenders", such as Defendant ABC, under the securitization process, was to trap as many unsuspecting borrowers as possible, Plaintiff included, regardless of the borrower's credit history or ability to pay, take as much of the borrower's equity as possible through high fees and sell the loans for a profit on the secondary market.

40.     Servicers, such as Defendant AHMSI, would then obtain the servicing rights to the borrowers' loans, Plaintiff's loan included, profiting by taking a percentage of the amounts collected from the borrowers, collecting additional fees or initiating foreclosure proceedings. Plaintiff is informed and believes, and thereon alleges that Defendant AHMSI is not paid to modify the terms of Plaintiff's Mortgage Note, giving them a disincentive to work with borrowers, Plaintiff included, to negotiate a fair resolution.

41.     Defendant ABC regularly trained, directed, authorized and/or participated with mortgage brokers, in this case, Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, and JENOBI, to implement this scheme, giving them monetary incentives to violate the borrowers' trust, Plaintiff included.

42.     On or about February 16, 2007, Defendant ALFANO approached Plaintiff telling him that he was the loan officer for Defendant NOVO, JUVON, and JUVON FINANCIAL solicited him to refinance his residence.

43.     Defendant ALFANO advised Plaintiff that he could get him the "best deal" and the "best interest rates" available on the market.  Defendant ALFANO knew or should have known that these assurances were false and misleading.

44.     At the time of this loan, Plaintiff could fully document his income and should have been classified as "Prime" borrowers.  At the time of this loan, Mr. CRAIG OHLENDORF had a FICO score of 785, placing him into the "prime" borrowers category.  Plaintiff is now informed

1   and believes, and thereon alleges that Defendant ALFANO classified Plaintiff as "Sub-Prime"

2   borrowers and did not disclose other loan program options.  Plaintiff was told by Defendant

3   ALFANO that the mortgage loan at issue was the only mortgage loan program Plaintiff could

4   qualify for.  Plaintiff is now informed and believes, and thereon alleges that they could have

5   qualified for a better loan program and were placed in a sub-prime program simply to enhance the

6   commissions and fees payable to Defendants.

7      45. On or about February 1, 2007, Plaintiff was approached by a Defendant JONOBI

8   of Defendant JUVON, who introduced him to loan broker, Defendant ALFANO, employed with

9   Defendant NOVO .

10      46. Defendants convinced Plaintiff to refinance his home and take cash out and give

11   $180,000.00 to Defendant JONOBI to investment in his company, Defendants JUVON.  Promises

12   were made to the Plaintiff that he would net an income of $90,000.00 annually because of this

13   investment.  The Defendants JONOBI, ALFANO, and JUVON worked in concert to illegally set

14   up a loan that should not have been approved.  The true purpose of the loan was to generate fees,

15   commissions and expenses payable to Defendants out of Plaintiff's refinance and alleged

16   investment.

17      47. Defendant ALFANO advised Plaintiff that he could get him 100% financing for

18   their loan.  However, Defendant ALFANO actually sold Plaintiff a predatory loan.  The loan, in

19   the amount of $450,000.00, carried a teaser rate of 1.25%, that adjusted to 12.950% interest rate,

20   based on MTA index plus 2.75%.  Plaintiff's loan was negatively amortized 120.00% and also

21   carried a prepayment penalty.  Plaintiff' initial monthly payments for the loan was $1,499.63.

22   Plaintiff' fully amortized payment was $4,365.19.

23      48. Defendant ALFANO further advised Plaintiff that if the loan ever became

24   unaffordable, he would simply refinance it into an affordable loan, something Defendant

25   ALFANO knew or should have known was false and misleading.  Defendant ALFANO knew or

26   should have known that these misrepresentations were designed to induce Plaintiff to accept this

27   loan to his detriment.

28      49. Plaintiff was not given a copy of any of the loan documents prior to closing as

required.  At closing, Plaintiff was only given a few minutes to sign the documents.  The notary did not explain any of the loan documents nor was Plaintiff allowed to review them.  Plaintiff was simply told to sign and initial the documents provided by the notary.  Further, Plaintiff did not receive the required copies of a proper notice of cancellation.

50.     The facts surrounding this loan transaction were purposefully hidden to prevent Plaintiff from discovering the true nature of the transaction and the documents involved therein.  Facts surrounding this transaction continue to be hidden from the Plaintiff to this day.

51.     On or about May 16, 2007, Plaintiff completed the loan on the Property.  The terms of the loan were memorialized in a Promissory Note, which was secured by a Deed of Trust on the Property.  The Deed of Trust identified Old Republic Title Company as Trustee, and Defendant ABC as Lender.

52.     The Deed of Trust also identified Defendant MERS as nominee for the Lender and Lender's successors and assigns, and the beneficiary.  However, Defendant MERS has no standing in this forum.  It is not licensed to be and/or act as a nominee or a beneficiary of any of the Defendants, nor does its Terms and Conditions, enumerated above, permit Defendant MERS to act in such capacity.  Defendant MERS was developed to be a document storage company, not a nominee or a beneficiary of any of the Defendants.  Therefore, the Deed of Trust must fail.  Further, Defendant MERS was not licensed to do business in the State of California, and was not registered with the State of California at the inception of the loan involved herein.

53.     On or about April 17, 2009, a Qualified Written Request ("QWR" or "Request") was mailed to Defendant AHMSI.  The QWR properly identified the Plaintiff, the Plaintiff's residential mortgage loan, the objections to the loan servicing and requested specific documents.  The QWR also included a demand to rescind the loan. Defendant AHMSI has yet to properly respond to this Request.

54.     On information and belief, Plaintiff alleges that each of the Defendants is not a "person entitled to enforce" the security interest under the Note and the Deed of Trust, as defined in California Commercial Code § 3301.  Plaintiff alleges that Defendants sold home loans, Plaintiff home loan included, to other financial entities, which "pooled" large numbers of loans,

put them into trusts, and sold securities based on such loans.  Defendants do not own the loan subject to this action, and are not entitled to enforce the security interest.

55.    Defendants regularly approved loans to unqualified borrowers and implemented unlawful lending practices.  Further, Defendant ABC employed brokers and loan officers who were paid commissions based on the volume of loans they sold to consumers, Plaintiff included.  Defendant ABC's loan officers received a greater commission or bonus for placing borrowers in loans with relatively high yield spread premiums.  As such, borrowers, Plaintiff included, were steered and encouraged into loans with terms unfavorable to them, or loans which the borrowers were not qualified to obtain.

56.    Defendants are attempting to obtain putative legal title to Plaintiff's Property without having established that either of them was ever a "person entitled to enforce" the security interest under the Note and the Deed of Trust.

57.    Each Defendant, in fact, is not a "person entitled to enforce" said interest.  No legal transfer of the Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property was effected that gave any of the Defendants the right to be named a trustee, mortgagee, beneficiary or an authorized agent of trustee, mortgagee or beneficiary of Plaintiff's Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property.

58.    Plaintiff entered into a loan transaction with Defendant ABC, which was subject to finance charges, and which was initially payable to Defendant ABC under the Deed of Trust.

59.    Defendants ABC, DECLARK, YOUNGS, and JENOBI, as agents of the Lender, were required to provide Plaintiff with said disclosures, but failed to do so.

60.    On or about June 17, 2009, Defendant DEUTSCHE recorded a Substitution of Trustee, purportedly substituting Defendant AHMSIDS as the Trustee under Plaintiff's Deed of Trust for the loan.

61.    On or about June 23, 2009, a Notice of Default was filed in Placer County, California, by Defendant T.D., this notice identified Defendant DEUTSCHE as the beneficiary under the Plaintiff's Deed.  This notice also identified Defendant AHMSIDS, as Trustee, but failed to state Defendant AHMSIDS's role with respect to Plaintiff's loan.  This notice, however,

1   identified Defendant DEUTSCHE as either the original Trustee (which it is not), the substitute

2   Trustee or acting as agent for the Beneficiary under the Deed of Trust.  The notice failed to

3   explain when, how or under what authority Defendant DEUTSCHE became a substitute Trustee

4   or an agent for the Beneficiary.

5          62.    On or about July 20, 2009 a document titled Assignment of Deed of Trust

6   California was executed by Korell Harp "Vice President" for Defendant MERS.  This Assignment

7   of Deed of Trust from Defendant MERS assigns Defendant American Home as it's successor.

8   This assignment falsely claims to be effective on June 15, 2009.  Plaintiff is informed and

9   believes, and thereon alleges the Assignment strips the security Trust from the Note, thus voiding

10   the security interest.

11          63.    On or about July 20, 2009 a document titled Assignment of Deed of Trust

12   California was executed by Korell Harp "Vice President" for Defendant AHMSI.  This

13   Assignment of Deed of Trust from Defendant AHMSI assigns Defendant DEUTSCHE as it's

14   successor.  This assignment falsely claims to be effective on June 15, 2009.  Plaintiff is informed

15   and believes, and thereon alleges the Assignment strips the security Trust from the Note, thus

16   voiding the security interest.

17          64.    In all of the wrongful acts alleged herein, Defendants, and each of them, have

18   utilized the United States mail, telephones, and internet in furtherance of their pattern of unlawful

19   and illegal conduct to collect on negotiable instruments when they were not entitled to do so.

20          65.    Further, Defendants fraudulently added costs and charges to the payoff amount of

21   the Note that were not justified or proper under the terms of the Note or the law.

22          66.    In pursuing the non-judicial foreclosure, Defendants represented that they have the

23   right to payment under the Mortgage Note, payment of which was secured by the Deed of Trust.

24   Whereas in fact, Defendants, and each of them, are not the real parties in interest because they are

25   not the legal trustee, mortgagee or beneficiary, nor are they authorized agents of the trustee,

26   mortgagee or beneficiary, nor are they in possession of the Note, or holders of the Note, or non-

27   holders of the Note entitled to payment, as required by the California Commercial Code §§ 3301

28   and 3309, and California Civil Code § 2924 et seq.  Therefore, Defendants instituted foreclosure

proceedings against Plaintiff's Property without rights under the law.

67.     Defendants engaged in a civil conspiracy where by they secreted the nature of the misdeeds alleged herein, the roles and identities of the various entities that were purportedly handling his Loan at any given time, and the transfers of the loan documents and negotiable instruments that are the subject of this action.

68.     Defendants misrepresented material facts with the intent of forcing Plaintiff to either pay large sums of money to the Defendants, to which they were not entitled, or to abandon the Property to a foreclosure sale, resulting in profit for the Defendants.

69.     The misrepresentations and allegations stated herein were all discovered within the past year, such that any applicable statute of limitations are extended or should be extended pursuant to the equitable tolling doctrine or other equitable principles.  Even through the exercise of reasonable diligence, Plaintiff would still not have been able to learn of or file his claim on time.

## FIRST CAUSE OF ACTION

## FRAUD

## (Against all Defendants)

70.     Plaintiff incorporates here each and every allegation set forth above.

**Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, and JUVON FINANCIAL**

71.     As alleged herein, Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, JUVON FINANCIAL, and each of them, made false representations to Plaintiff regarding material facts, including but not limited to, interest rate attached to the Plaintiff's loan, financing options, availability of refinancing, and Plaintiff's qualification for this loan, at the inception of this transaction, designed to fraudulently induce Plaintiff to enter into this transaction.

72.     Additional evidentiary facts constituting fraud in this matter are secreted within each Defendants' knowledge and possession.

73.     Defendants, individually and collectively, conspired together to perpetrate the

1  fraud alleged herein.

2  74.   At the time of this loan, Plaintiff could fully document his income and should have

3  been classified as "Prime" borrowers.  At the time of this loan, Mr. CRAIG OHLENDORF had a

4  FICO score of 785, placing him into the "prime" borrowers category.  Plaintiff is now informed

5  and believes, and thereon alleges that Defendant ALFANO classified Plaintiff as "Sub-Prime"

6  borrowers and did not disclose other loan program options.  Plaintiff was told by Defendant

7  ALFANO that the mortgage loan at issue was the only mortgage loan program Plaintiff could

8  qualify for.  Plaintiff is now informed and believes, and thereon alleges that they could have

9  qualified for a better loan program and were placed in a sub-prime program simply to enhance the

10  commissions and fees payable to Defendants.

11  75.   On or about February 1, 2007, Plaintiff was approached by a Defendant JONOBI

12  of Defendant JUVON, who introduced him to loan broker, Defendant ALFANO, employed with

13  Defendant NOVO .

14  76.   Defendants convinced Plaintiff to refinance his home and take cash out and give

15  $180,000.00 to Defendant JONOBI to investment in his company, Defendants JUVON.  Promises

16  were made to the Plaintiff that he would net an income of $90,000.00 annually because of this

17  investment.  The Defendants JONOBI, ALFANO, and JUVON worked in concert to illegally set

18  up a loan that should not have been approved.  The true purpose of the loan was to generate fees,

19  commissions and expenses payable to Defendants out of Plaintiff's refinance and alleged

20  investment.

21  77.   Defendant ALFANO advised Plaintiff that he could get him 100% financing for

22  their loan.  However, Defendant ALFANO actually sold Plaintiff a predatory loan.  The loan, in

23  the amount of $450,000.00, carried a teaser rate of 1.25%, that adjusted to 12.950% interest rate,

24  based on MTA index plus 2.75%.  Plaintiff's loan was negatively amortized 120.00% and also

25  carried a prepayment penalty.  Plaintiff' initial monthly payments for the loan was $1,499.63.

26  Plaintiff' fully amortized payment was $4,365.19.

27  ///

28  ///

**Defendants ABC, DECLARK, YOUNGS, JENOBI, ALFANO, NOVO, JUVON, and JUVON FINANCIAL**

78.    Defendant ABC was the original lender of the subject mortgage loan for Plaintiff's Property.

79.    Defendant ABC's conduct herein was not that of a traditional lender, in that it actively participated in the enforcement of the predatory lending scheme against Plaintiff's interest.

80.    Defendant ABC regularly trained, directed, authorized, and participated with mortgage brokers and loan officers to implement this fraud, giving them monetary incentives to violate the borrowers' trust.

81.    Defendant ABC exercised extensive control over the actions of Defendants DECLARK, YOUNGS, JENOBI, ALFANO, NOVO, JUVON, and JUVON FINANCIAL by directly ordering, authorizing and participating with Defendants DECLARK, YOUNGS, JENOBI, ALFANO, NOVO, JUVON, and JUVON FINANCIAL in order to conceal the misrepresentations on Plaintiff's loan application.

82.    Defendant ABC shared in the profits made from the sale of the subject mortgage loans to Plaintiff by ensuring that the mortgage contained terms that made them profitable on the secondary market.

83.    Defendant ABC, through its underwriters, knew that the income stated on Plaintiff's loan application did not match the monthly income represented from the income verification documents provided by Plaintiff to Defendants DECLARK, YOUNGS, JENOBI, ALFANO, NOVO, JUVON, and JUVON FINANCIAL.

84.    Defendant ABC conspired with Defendants DECLARK, YOUNGS, JENOBI, ALFANO, NOVO, JUVON, and JUVON FINANCIAL to hide the true terms of this loan from Plaintiff by not providing Plaintiff with the required loan disclosure documents prior to or after the signing of the loan documents.

85.    At closing, Plaintiff were presented with a stack of documents by a notary, approximately 1 inch thick, with tabs that indicated where Plaintiff should sign and/or initial.

There was no representative of Defendants ABC, DECLARK, YOUNGS, JENOBI, ALFANO, or NOVO, JUVON, JUVON FINANCIAL present at closing.

86.     In fact, Defendants DECLARK, YOUNGS, JENOBI, ALFANO, or NOVO, JUVON, JUVON FINANCIAL had been advised by Defendant ABC not to be present at closing.

87.     At closing, the notary did not explain any of the loan documents to Plaintiff and had been advised not to explain any of the loan documents to Plaintiff by Defendants DECLARK, YOUNGS, JENOBI, ALFANO, or NOVO, JUVON, JUVON FINANCIAL.  The notary simply told Plaintiff to sign and initial the documents provided.

88.     Plaintiff were only given a few minutes to sign the documents and Plaintiff were not allowed to review the documents.

89.     At the time of this loan, Plaintiff could fully document his income and should have been classified as "Prime" borrowers.  At the time of this loan, Mr. CRAIG OHLENDORF had a FICO score of 785, placing him into the "prime" borrowers category.  Plaintiff is now informed and believes, and thereon alleges that Defendant ALFANO classified Plaintiff as "Sub-Prime" borrowers and did not disclose other loan program options.  Plaintiff was told by Defendant ALFANO that the mortgage loan at issue was the only mortgage loan program Plaintiff could qualify for.  Plaintiff is now informed and believes, and thereon alleges that they could have qualified for a better loan program and were placed in a sub-prime program simply to enhance the commissions and fees payable to Defendants.

90.     On or about February 1, 2007, Plaintiff was approached by a Defendant JONOBI of Defendant JUVON, who introduced him to loan broker, Defendant ALFANO, employed with Defendant NOVO .

91.     Defendants convinced Plaintiff to refinance his home and take cash out and give $180,000.00 to Defendant JONOBI to investment in his company, Defendants JUVON.  Promises were made to the Plaintiff that he would net an income of $90,000.00 annually because of this investment.  The Defendants JONOBI, ALFANO, and JUVON worked in concert to illegally set up a loan that should not have been approved.  The true purpose of the loan was to generate fees, commissions and expenses payable to Defendants out of Plaintiff's refinance and alleged

investment.

92.     Defendant ALFANO advised Plaintiff that he could get him 100% financing for their loan.  However, Defendant ALFANO actually sold Plaintiff a predatory loan.  The loan, in the amount of $450,000.00, carried a teaser rate of 1.25%, that adjusted to 12.950% interest rate, based on MTA index plus 2.75%.  Plaintiff's loan was negatively amortized 120.00% and also carried a prepayment penalty.  Plaintiff' initial monthly payments for the loan was $1,499.63.  Plaintiff' fully amortized payment was $4,365.19.

**Defendant AHMSI**

93.     As alleged herein, Defendant AHMSI misrepresented to Plaintiff that Defendant AHMSI has the right to collect monies from Plaintiff on its behalf or on behalf of others when Defendant AHMSI had no legal right to collect such monies.

94.     Defendant AHMSI has known, at all relevant times, that it, in fact, is not entitled to collect monies from Plaintiff.

95.     Plaintiff's mortgage note is a negotiable instrument under the Uniform Commercial Code Article 3 and California Commercial Code § 3301 et seq.

96.     To transfer ownership of a mortgage note in a "True Sale" transaction, it requires proper endorsement by a person with authority to endorse the note, physical delivery of the note and acceptance of the note.

97.     In "selling" this mortgage note Defendant ABC failed to follow the basic legal requirements for the transfer of a negotiable instrument and an interest in real property, in that (1) there was not a proper and timely written assignment of the deed of trust, (2) there was not a proper endorsement of the note a person with authority to endorse the note, and (3) there was not proper and timely delivery of the Note and acceptance of the Note and Deed of Trust.

98.     As a result of Defendant ABC's failure to follow the guidelines under Uniform Commercial Code Article 3 and California Commercial Code § 3301 et seq., no interest in Plaintiff's Mortgage Note, Deed of Trust or Property was ever legally transferred to any of the named Defendants or Doe Defendants.

99.     Defendant AHMSI, as part of its duties and responsibilities "servicing"  the

Subject Mortgage, entered information related to the subject mortgage loan into Defendant MERS

and therefore has direct knowledge related to inadequate and illegal transfers of title, inadequate

and illegal assignments of rights, inadequate and illegal substitutions of parties and all other

inadequate and illegal activity related to the chain of title for the Subject Property.

100.    Accordingly, Defendant AHMSI could not have legally been given the right to

service Plaintiff's Loans.

101.    Defendant AHMSI knew or should have known the law - namely, Uniform

Commercial Code Article 3 and California Commercial Code § 3301 - and its application to its

business services.

102.    Defendant AHMSI's representations to Plaintiff that it has the right to service

Plaintiff's Loans was, and is, fraudulent.

**Defendant MERS**

103.    As alleged herein, Defendant MERS misrepresented to Plaintiff on the Deed of

Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or

the Note and/or substitute trustees under the Deed of Trust.

104.    Defendant MERS misrepresented that it followed the applicable legal requirements

to transfer the Note and Deed of Trust to subsequent beneficiaries.

105.    Defendant MERS has no standing in this forum.  It is not licensed to be and/or act

as a nominee or a beneficiary of any of the Defendants, nor does its Terms and Conditions,

enumerated above, permit Defendant MERS to act in such capacity.

106.    Defendant MERS was developed to be a document storage company, not a

nominee or a beneficiary of any of the Defendants.  Therefore, the Deed of Trust must fail.

107.    Further, Defendant MERS was not licensed to do business in the State of

California, and was not registered with the State of California at the inception of the loan involved

herein.

**Defendants T.D., AHMSIDS, and DEUTSCHE**

108.    As alleged herein, Defendants T.D., AHMSIDS, and DEUTSCHE misrepresented

to Plaintiff that Defendants T.D., AHMSIDS, and DEUTSCHE was entitled to enforce the

security interest and that it has the right to institute a non-judicial foreclosure proceeding under the Deed of Trust when they filed a Notice of Default on June 23, 2009.

109.   Defendants T.D., AHMSIDS, and DEUTSCHE was not a trustee, mortgagee or beneficiary, nor are they authorized agents of the trustee, mortgagee or beneficiary, nor are they in possession of the Note, or holders of the Note, or non-holders of the Note entitled to payment, as required by California Commercial Code §§ 3301 and 3309, to have standing to utilize California Civil Code § 2923.5 et seq. to foreclose on Plaintiff's home.

110.   Defendants T.D., AHMSIDS, and DEUTSCHE did not have the right to initiate foreclosure proceeding herein under California Civil Code § 2924 et seq.

**General Allegations as to all Defendants and Damages**

111.   These material representations made by each Defendant were false.

112.   Each Defendant knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth.

113.   Defendants intended that Plaintiff rely on these material representations.

114.   Plaintiff reasonably relied on said representations.

115.   As a result of Plaintiff reliance, he was harmed and suffered damages including, but not limited to, loss of property, incurred attorneys' fees and costs to recover the Property, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression. Plaintiff reliance on Defendants' false material representations was a substantial factor in causing Plaintiff harm.

116.   Additional evidentiary facts constituting fraud in this matter are secreted within Defendants' knowledge and possession.

117.   Defendants, and each of them, conspired together to perpetrated the fraud alleged herein over the course of several years.

118.   Defendants are guilty of malice, fraud and/or oppression, as defined in California Civil Code § 3294.  Defendants' actions were malicious and willful, in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff.  As such,

1   Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish

2   Defendants and to deter them from engaging in future misconduct.

3        119.   Defendants ABC, AHMSI, NOVO, JUVON, JUVON FINANCIAL, T.D.,

4   AHMSIDS, and DEUTSCHE's officers, directors and/or managing agents failed to adequately

5   supervise, train and direct its employees, and employing them with conscious disregard for the

6   safety of Plaintiff and thereafter ratified the conduct of its employees.

7        120.   Defendants ABC, AHMSI, NOVO, JUVON, JUVON FINANCIAL, T.D.,

8   AHMSIDS, and DEUTSCHE implemented policies and procedures which permitted and

9   encouraged the conduct of its employees and agents in this case and as such said Defendant

10  consented, acquiesced, approved and ratified the behavior and conduct of its employees,

11  including Does 1 through 20, and each of them in causing harm to Plaintiff.

12       121.   Accordingly, Plaintiff is entitled to recover punitive damages from Defendants

13  pursuant to California Civil Code § 3294, in an amount according to proof.

14  **SECOND CAUSE OF ACTION**

15  **BREACH OF CONTRACT**

16  **OR**

17  **IN THE ALTERNATIVE**

18  **RESCISSION OF CONTRACT**

19  **(Against Defendants ALFANO, DECLARK, YOUNGS, and JENOBI, and ABC)**

20       122.   Plaintiff incorporates here each and every allegation set forth above.

21  **Brokerage Agreement**

22       123.   Plaintiff entered into an agreement with Defendants NOVO, JUVON, JUVON

23  FINANCIAL, ALFANO, DECLARK, YOUNGS, and JENOBI, whereby Defendants promised to

24  provide Plaintiff with an affordable loan, fully disclose the terms of the loan, and work on

25  Plaintiff's behalf and Plaintiff agreed to pay a commission.

26       124.   Plaintiff fully performed his duties under the contract with Defendants ALFANO,

27  DECLARK, YOUNGS, JENOBI, NOVO, JUVON, and JUVON FINANCIAL.

28       125.   Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON,

JUVON FINANCIAL, and each of them, breached their brokerage agreement with Plaintiff they sold Plaintiff a predatory loan with toxic terms and by failing to exercise reasonable efforts and due diligence to secure the type of loan terms promised thus failing to provide Plaintiff with an affordable loan.

126.    Specifically, Defendants convinced Plaintiff to refinance his home and take cash out and give $180,000.00 to Defendant JONOBI to investment in his company, Defendants JUVON.  Promises were made to the Plaintiff that he would net an income of $90,000.00 annually because of this investment.  The Defendants JONOBI, ALFANO, and JUVON worked in concert to illegally set up a loan that should not have been approved.  The true purpose of the loan was to generate fees, commissions and expenses payable to Defendants out of Plaintiff's refinance and alleged investment.

127.    Defendant ALFANO advised Plaintiff that he could get him 100% financing for their loan.  However, Defendant ALFANO actually sold Plaintiff a predatory loan.  The loan, in the amount of $450,000.00, carried a teaser rate of 1.25%, that adjusted to 12.950% interest rate, based on MTA index plus 2.75%.  Plaintiff's loan was negatively amortized 120.00% and also carried a prepayment penalty.  Plaintiff' initial monthly payments for the loan was $1,499.63. Plaintiff' fully amortized payment was $4,365.19.

128.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, and JUVON FINANCIAL breached their agreement when they failed to provide proper disclosures on or before closing.

129.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, and JUVON FINANCIAL breached their agreement when they failed to refinance as initially promised.

130.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, and JUVON FINANCIAL breached their agreement by intentionally or negligently failing to obtain payment and interest rates as promised.

131.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, and JUVON FINANCIAL breached their agreement by failing to submit an accurate loan application.

132.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, and JUVON FINANCIAL breached their agreement by failing to provide loan documents for Plaintiff's review prior to closing, and failing to explain the loan documents to the Plaintiff.

133.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, and JUVON FINANCIAL further breached their duties when they failed to provide the mortgage terms as promised.

**Breach of Mortgage Loan Agreement**

134.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, JUVON FINANCIAL, ABC, and each of them, breached their agreement with Plaintiff when they sold Plaintiff a predatory loan with toxic terms.

135.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, JUVON FINANCIAL, and ABC breached their agreement with Plaintiff by failing to exercise reasonable efforts and due diligence as promised, thus failing to provide Plaintiff with an affordable loan.

136.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, JUVON FINANCIAL, and ABC also breached their agreement with Plaintiff by committing wrongful acts, including but not limited to, intentionally or negligently failing to obtain payment and interest rates as promised, failing to submit an accurate loan application, failing to supervise, failing to provide loan documents for Plaintiff's review prior to closing, and failing to explain the loan documents to the Plaintiff.

137.    Defendants ALFANO, DECLARK, YOUNGS, JENOBI, ABC, and each of them, further breached their duties when they failed to refinance the mortgage as promised, which was contrary to the terms negotiated by the Plaintiff and the named Defendants.

138.    Specifically, Defendants convinced Plaintiff to refinance his home and take cash out and give $180,000.00 to Defendant JONOBI to investment in his company, Defendants JUVON.  Promises were made to the Plaintiff that he would net an income of $90,000.00 annually because of this investment.  The Defendants JONOBI, ALFANO, and JUVON worked in concert to illegally set up a loan that should not have been approved.  The true purpose of the loan was to

1  generate fees, commissions and expenses payable to Defendants out of Plaintiff's refinance and

2  alleged investment.

3       139.   Defendant ALFANO advised Plaintiff that he could get him 100% financing for

4  their loan.  However, Defendant ALFANO actually sold Plaintiff a predatory loan.  The loan, in

5  the amount of $450,000.00, carried a teaser rate of 1.25%, that adjusted to 12.950% interest rate,

6  based on MTA index plus 2.75%.  Plaintiff's loan was negatively amortized 120.00% and also

7  carried a prepayment penalty.  Plaintiff' initial monthly payments for the loan was $1,499.63.

8  Plaintiff' fully amortized payment was $4,365.19.

9       140.   This breach by the Defendants has sent Plaintiff into foreclosure instead of

10  financing his mortgage as agreed.

11  **Rescission**

12       141.   In the alternative, no contract existed between Plaintiff and Defendants ALFANO,

13  DECLARK, YOUNGS, JENOBI, and ABC because of a mutual mistake relating to the basic or

14  material contractual terms alleged above.

15       142.   This mutual mistake was not caused by Plaintiff's neglect of his legal obligations.

16       143.   Defendants ALFANO, DECLARK, YOUNGS, JENOBI, and ABC were aware of

17  Plaintiff's mistaken belief with respect to the material terms alleged above, and unfairly utilized

18  that mistaken belief in a manner that enabled them to take advantage of the Plaintiff.

19       144.   Specifically, In the alternative, the contract is voidable because Plaintiff was

20  mistaken as to the material contractual terms alleged above, a basic assumption on which she

21  made the contract.  Defendant ALFANO and ABC not only knew of the mistake, but, in fact,

22  caused the mistake as alleged above.

23       145.   As a result of Defendants' wrongful conduct, Plaintiff has suffered various

24  damages and injuries including, but not limited to, loss of property, incurred attorneys' fees and

25  costs to recover the Property, a loss of reputation and goodwill, destruction of credit, severe

26  emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety,

27  sleeplessness, sadness, and depression, according to proof at trial.

28       146.   Plaintiff further seeks rescission of the loan agreement, restitution, disgorgement of

sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further

relief as the Court may deem just and proper.  Plaintiff is ready, willing, and able to tender the net

proceeds of loan agreement once the real party in interest has been determined and the net monies

after restitution, disgorgement of sums wrongfully obtained, costs of suit, and reasonable

attorneys' fees have been determined.

### THIRD CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendants ALFANO, NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, and JENOBI)

147.    Plaintiff incorporates here each and every allegation set forth above.

148.    A duty of good faith and fair dealing was implied by law into the contract at issue

in this action at its inception.  Defendants' duties of good faith and fair dealing included, but were

not limited to, the following: (1) Defendants had a duty to pay at least as much regard to Plaintiff's

financial interests as to Defendants' financial interests; (2) Defendants had a duty to comply with

all applicable laws in the State of California; (3) Defendants agreed to act in good faith and deal

fairly with Plaintiff when they entered into the mortgage loan agreement and accepted commission

payments from Plaintiff.

149.    Defendants ALFANO, NOVO, JUVON, JUVON FINANCIAL, DECLARK,

YOUNGS, JENOBI, and each of them, thereby assumed obligations of good faith and fair dealing

toward Plaintiff and thereby agreed to abide by such obligations.

150.    Defendants JONOBI, JUVON, and ALFANO advised Plaintiff that they could get

him the "best deal" and the "best interest rates" available on the market. Defendants JONOBI,

JUVON, and ALFANO knew or should have known that these assurances were false and

misleading.

151.    Nevertheless, Defendants ALFANO, NOVO, JUVON, JUVON FINANCIAL,

DECLARK, YOUNGS, JENOBI, and each of them, breached the implied duty of good faith and

fair dealing owed to Plaintiff by, among other things, performing acts and failing to act as alleged

herein, and by failing to perform the duties specifically enumerated herein.  Defendants further

1  breached the duty of good faith and fair dealing by:

2       a.      Failing to pay at least as much regard to Plaintiff's interests as to Defendants'

3               interests;

4       b.      Failing to disclose to Plaintiff the true nature of the loan that is the subject of this

5               action;

6       c.      Failing to give Plaintiff the requisite notice and disclosures;

7       d.      Directing Plaintiff into a toxic loan.

8       152.    In the absence of a reasonable basis for doing so, and with full knowledge and

9  reckless disregard of the consequences, Defendants acted in bad faith toward Plaintiff by, among

10  other things, failing to comply with all applicable laws.

11       153.    Plaintiff is informed and believes, and thereon alleges that Defendants ALFANO,

12  NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, and each of them,

13  have a pattern and practice of similar bad faith conduct toward other borrowers who are similarly

14  situated.

15       154.    As a proximate result of Defendants ALFANO, NOVO, JUVON, JUVON

16  FINANCIAL, DECLARK, YOUNGS, and JENOBI's breaches of the covenant of good faith and

17  fair dealing alleged herein, Plaintiff has suffered damages, including but not limited to, loss of

18  property, incurred attorneys' fees and costs to recover the Property, a loss of reputation and

19  goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger,

20  helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at

21  trial but within the jurisdiction of this Court.

22       155.    Defendants ALFANO, NOVO, JUVON, JUVON FINANCIAL, DECLARK,

23  YOUNGS, JENOBI, and each of them, pursued said course of conduct intentionally and

24  maliciously and in conscious disregard of the rights of the Plaintiff.  Further, Defendants

25  ALFANO, NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, and JENOBI's

26  refusal to follow through with their duty to assist Plaintiff was made with the intent to intimidate,

27  vex and harass Plaintiff so as to discourage him from pursuing his legal rights under the mortgage

28  law.  In order to deter such conduct of Defendants ALFANO, NOVO, JUVON, JUVON

1   FINANCIAL, DECLARK, YOUNGS, and JENOBI in the future, and to prevent repetition thereof

2   as a practice, by way of punishment and as example, Plaintiff prays that exemplary damages be

3   awarded according to proof at trial pursuant to California Civil Code § 3294.

### FOURTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA ROSENTHAL ACT

### CALIFORNIA CIVIL CODE § 1788 et seq.

### (Against Defendant AHMSI)

8   156.   Plaintiff incorporates here each and every allegation set forth above.

9   157.   Plaintiff alleges that Defendant AHMSI is a debt collector within the meaning of

10  the Rosenthal Act in that they regularly, in the course of their business, on behalf or themselves or

11  others, engage in the collection of debt.

12  158.   Defendant AHMSI used unfair and unconscionable means to collect a debt not

13  owed to Defendant AHMSI or its principal by sending deceptive letters and making phone calls to

14  Plaintiff demanding payment.

15  159.   Defendant AHMSI made false reports to credit reporting agencies about Plaintiff's

16  credit standing, falsely stating the amount of Plaintiff's mortgage debt, falsely stating that a debt

17  was owed to Defendant AHMSI, and falsely stating Plaintiff's payment history.

18  160.   Further, Defendant AHMSI increased the amount of Plaintiff's mortgage debt by

19  stating amounts not permitted by law or contract, including, but not limited to, excessive service

20  fees, attorneys' fees, and late charges.

21  Defendant AHMSI's actions have caused Plaintiff actual damages, including, but not

22  limited to, loss of property, incurred attorneys' fees and costs to recover the Property, a loss of

23  reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite,

24  frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression,

25  according to proof at trial but within the jurisdiction of this Court.

26  161.   As a result of Defendant AHMSI's violations, Plaintiff is entitled to statutory

27  damages in an amount to be determined at trial, actual damages according to proof, and costs and

28  reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE**

**(Against Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, and ALFANO)**

162.    Plaintiff incorporates here each and every allegation set forth above.

163.    Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, ALFANO, and each of them, owed a duty to the Plaintiff to exercise reasonable skill and care in the exercise of the agency duties for the Plaintiff's benefit and best interest and to perform acts as brokers of loans in such a manner as to not cause Plaintiff harm.

164.    Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, ALFANO, and each of them, breached their duty to the Plaintiff when they used their knowledge and skill to direct Plaintiff into a loan for which Plaintiff was not qualified based upon his income as stated in the documents provided to Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, and ALFANO.

165.    Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, ALFANO, and each of them, further breached their duty to Plaintiff by directing him into a loan transaction that they may not have otherwise qualified for by industry standards, resulting in excessive fees paid by the Plaintiff and payments in excess of Plaintiff ability to pay.

166.    Specifically, At the time of this loan, Plaintiff could fully document his income and should have been classified as "Prime" borrowers.  At the time of this loan, Mr. CRAIG OHLENDORF had a FICO score of 785, placing him into the "prime" borrowers category. Plaintiff is now informed and believes, and thereon alleges that Defendant ALFANO classified Plaintiff as "Sub-Prime" borrowers and did not disclose other loan program options.  Plaintiff was told by Defendant ALFANO that the mortgage loan at issue was the only mortgage loan program Plaintiff could qualify for.  Plaintiff is now informed and believes, and thereon alleges that they could have qualified for a better loan program and were placed in a sub-prime program simply to enhance the commissions and fees payable to Defendants.

167.    On or about February 1, 2007, Plaintiff was approached by a Defendant JONOBI

of Defendant JUVON, who introduced him to loan broker, Defendant ALFANO, employed with

Defendant NOVO .

168.   Defendants convinced Plaintiff to refinance his home and take cash out and give

$180,000.00 to Defendant JONOBI to investment in his company, Defendants JUVON.  Promises

were made to the Plaintiff that he would net an income of $90,000.00 annually because of this

investment.  The Defendants JONOBI, ALFANO, and JUVON worked in concert to illegally set

up a loan that should not have been approved.  The true purpose of the loan was to generate fees,

commissions and expenses payable to Defendants out of Plaintiff's refinance and alleged

investment.

169.   Defendant ALFANO advised Plaintiff that he could get him 100% financing for

their loan.  However, Defendant ALFANO actually sold Plaintiff a predatory loan.  The loan, in

the amount of $450,000.00, carried a teaser rate of 1.25%, that adjusted to 12.950% interest rate,

based on MTA index plus 2.75%.  Plaintiff's loan was negatively amortized 120.00% and also

carried a prepayment penalty.  Plaintiff' initial monthly payments for the loan was $1,499.63.

Plaintiff' fully amortized payment was $4,365.19.

170.   As a result of Defendants' negligence, Plaintiff suffered and continues to suffer

harm, and is entitled to damages, including but not limited to, loss of property, incurred attorneys'

fees and costs to recover the Property, a loss of reputation and goodwill, destruction of credit,

severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness,

anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the

jurisdiction of this Court.

## SIXTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

## (Against Defendants ALFANO, NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, and JENOBI)

171.   Plaintiff incorporates here each and every allegation set forth above.

172.   Defendants ALFANO, DECLARK, YOUNGS, JENOBI, NOVO, JUVON, and

JUVON FINANCIAL were all agents for the Plaintiff by express and implied contract and by

operation of law.

173.     Plaintiff hired Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, and ALFANO as his agents for the purpose of obtaining a loan to refinance the Property.

174.     Pursuant to an agreement between the parties, Plaintiff agreed to pay Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, and ALFANO a commission from the proceeds of his Loan and agreed to pay Defendant ABC substantial fees to originate his loan.

175.     Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, and ALFANO owed a fiduciary duty to the Plaintiff to act primarily for his benefit, to act with proper skill and diligence, and not to make a personal profit from the agency at the expense of their principal, the Plaintiff.

176.     As Plaintiff's agents, Defendants owed Plaintiff a duty of loyalty and a duty to deal fairly with him at all times.

177.     Defendants ALFANO, NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, and each of them, willfully or recklessly breached their fiduciary duty and duty of loyalty by obtaining a mortgage loan for him that had unfavorable terms and that he could not ultimately afford, by not disclosing the negative consequences of said loan, and by engaging in unfair business practices.

178.     Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, and JENOBI, each through their own action, interfered with the other Defendant ALFANO's fiduciary obligations by offering Defendant ALFANO, training, direction, and incentives to breach his fiduciary duty by means of creating and participating in a scheme that created an illusion to Plaintiff that Plaintiff are being informed of all of the material facts, when in fact he were not.

179.     Specifically, At the time of this loan, Plaintiff could fully document his income and should have been classified as "Prime" borrowers.  At the time of this loan, Mr. CRAIG OHLENDORF had a FICO score of 785, placing him into the "prime" borrowers category. Plaintiff is now informed and believes, and thereon alleges that Defendant ALFANO classified

Plaintiff as "Sub-Prime" borrowers and did not disclose other loan program options.  Plaintiff was told by Defendant ALFANO that the mortgage loan at issue was the only mortgage loan program Plaintiff could qualify for.  Plaintiff is now informed and believes, and thereon alleges that they could have qualified for a better loan program and were placed in a sub-prime program simply to enhance the commissions and fees payable to Defendants.

180.    On or about February 1, 2007, Plaintiff was approached by a Defendant JONOBI of Defendant JUVON, who introduced him to loan broker, Defendant ALFANO, employed with Defendant NOVO .

181.    Defendants convinced Plaintiff to refinance his home and take cash out and give $180,000.00 to Defendant JONOBI to investment in his company, Defendants JUVON.  Promises were made to the Plaintiff that he would net an income of $90,000.00 annually because of this investment.  The Defendants JONOBI, ALFANO, and JUVON worked in concert to illegally set up a loan that should not have been approved.  The true purpose of the loan was to generate fees, commissions and expenses payable to Defendants out of Plaintiff's refinance and alleged investment.

182.    Defendant ALFANO advised Plaintiff that he could get him 100% financing for their loan.  However, Defendant ALFANO actually sold Plaintiff a predatory loan.  The loan, in the amount of $450,000.00, carried a teaser rate of 1.25%, that adjusted to 12.950% interest rate, based on MTA index plus 2.75%.  Plaintiff's loan was negatively amortized 120.00% and also carried a prepayment penalty.  Plaintiff' initial monthly payments for the loan was $1,499.63. Plaintiff' fully amortized payment was $4,365.19.

183.    Plaintiff has been damaged as a result of Defendants' breach, and is entitled to actual damages including, but not limited to, loss of property, incurred attorneys' fees and costs to recover the Property, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court.

184.    Defendants consciously disregarded Plaintiff rights, deliberately breaching their respective fiduciary duties, showing willful misconduct, malice, fraud, wantonness, oppression,

and entire want of care, thus authorizing the imposition of punitive damages pursuant to California Civil Code § 3294.

### SEVENTH CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.

### (Against all Defendants)

185.    Plaintiff incorporates here each and every allegation set forth above.

**Defendant AHMSI**

186.    Defendant AHMSI's violation of the Rosenthal Act, their fraud, and illegal foreclosure activities, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

187.    Defendant AHMSI violated the Rosenthal Act when it used unfair and unconscionable means to collect a debt not owed to Defendant AHMSI or its principal by repeatedly, over the past year, sending threatening and deceptive letters and making threatening and deceptive phone calls to Plaintiff demanding payment in violation of California Civil Code § 1788.13, when it repeatedly made false reports to credit reporting agencies about Plaintiff's credit standing, falsely stating the amount of Plaintiff's mortgage debt, falsely stating that a debt was owed to Defendant ABC. and falsely stating Plaintiff's payment history, violating California Civil Code § 1788.13(f), and when it increased the amount of Plaintiff's mortgage debt by stating amounts not permitted by law or contract, including, but not limited to, excessive service fees, attorneys' fees, and late charges, in violation of California Civil Code 1788.10(f).

**Defendant ABC**

188.    Defendant ABC's fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

189.    Defendant ABC, committed negligence when it breached its fiduciary duty when it directly ordered, authorized and participated in Defendant ALFANO's conduct, approved an application with false information, and placed Plaintiff into a loan which he could not ultimately afford.  In addition, Defendant ABC, breached its duty of care to the Plaintiff provide proper

disclosures on or before closing, properly maintain the original Note, and properly assign or transfer the Note.

190. Defendant ABC, committed fraud when it, while acting in concert with Defendant ALFANO's tortious conduct, approved the loan to Plaintiff which he was unqualified for, implemented unlawful lending practices, and engaged in fraudulent assignments for the purposes of foreclosure.

191. Defendant ABC breached its contract, implied covenant of good faith and fair dealing, and fiduciary duty when it ordered, authorized, and participated in Defendant ALFANO's conduct, approved an application with false information, failed to provide proper disclosures at closing, failed to allow Plaintiff to review the final loan documents, and failed to explain any of the final loan documents to Plaintiff at closing. Defendant ABC, also breached by failing to exercise reasonable efforts and due diligence as promised, engaged in the above mentioned wrongful acts, and thus failed to provide Plaintiff with an affordable loan.

**Defendants T.D., AHMSIDS, and DEUTSCHE**

192. Defendants T.D., AHMSIDS, and DEUTSCHE fraud and illegal foreclosure activities, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

193. Defendant T.D., AHMSIDS, and deutsche were negligent when they breached their duties when they failed to exercise their due diligence in ensuring that they properly acquired the right to enforce the security interests in Plaintiff's note.

194. Defendant T.D., AHMSIDS, and deutsche committed fraud when they misrepresented to Plaintiff that Defendants T.D., AHMSIDS, and DEUTSCHE were entitled to enforce the security interest and had the rights to institute a non-judicial foreclosure proceeding under the deed of trust of the loan when it filed a notice of default on June 23, 2009.

195. Defendant T.D., AHMSIDS, and deutsche violated business and professions code § 17200 when they began illegal foreclosure activities on Plaintiff's property. Defendant T.D., AHMSIDS, and deutsche were not, and are not, a beneficiary, assignee or employee of the person or entity who are otherwise entitled to payment, the basic requirement to utilize California civil

code § 2924 et seq.  Defendant T.D., AHMSIDS, DEUTSCHE, and each of them, are not

"person[s] entitled to enforce" the security interests on the property, as that term is defined in

commercial code § 3301.

196.    Defendant DEUTSCHE was negligent when it breached its duty of due care to

Plaintiff when it failed to exercise its due diligence in ensuring that the security interests in

Plaintiff's loan was properly transferred into securitized trust in which Defendant DEUTSCHE is

the trustee.

197.    Defendant DEUTSCHE committed fraud when it made misrepresentations to

Plaintiff that it was the trustee of a secuiritized trust which owns Plaintiff's loan and began

foreclosure proceedings against Plaintiff's property under this belief.

198.    Defendant DEUTSCHE violated business and professions code § 17200 when it

began illegal foreclosure activities on Plaintiff's property.  Defendant DEUTSCHE was not, and is

not, a beneficiary, assignee or employee of the person or entity who is otherwise entitled to

payment, the basic requirement to utilize California civil code § 2924 et seq.  Defendants

DEUTSCHE, AHMSI, T.D., AHMSIDS, and each of them, are not "person[s] entitled to enforce"

the security interests on the property, as that term is defined in commercial code § 3301.

**Defendants NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS, JENOBI, and**
**ALFANO**

199.    Defendant NOVO, JUVON, JUVON FINANCIAL, DECLARK, YOUNGS,

JENOBI, and ALFANO's negligence, breach of fiduciary duty, fraud, breach of contract, and

breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute

unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and

Professions Code § 17200 et seq.

200.    At the time of this loan, Plaintiff could fully document his income and should have

been classified as "prime" borrowers.  At the time of this loan, Mr. CRAIG OHLENDORF had a

fico score of 785, placing him into the "prime" borrowers category.  Plaintiff is now informed and

believes, and thereon alleges that Defendant alfano classified Plaintiff as "sub-prime" borrowers

and did not disclose other loan program options.  Plaintiff was told by Defendant alfano that the

mortgage loan at issue was the only mortgage loan program Plaintiff could qualify for. Plaintiff is now informed and believes, and thereon alleges that they could have qualified for a better loan program and were placed in a sub-prime program simply to enhance the commissions and fees payable to Defendants.

201.    On or about February 1, 2007, Plaintiff was approached by a Defendant JONOBI of Defendant JUVON, who introduced him to loan broker, Defendant ALFANO, employed with Defendant NOVO .

202.    Defendants convinced Plaintiff to refinance his home and take cash out and give $180,000.00 to Defendant JONOBI to investment in his company, Defendants juvon. promises were made to the Plaintiff that he would net an income of $90,000.00 annually because of this investment. the Defendants JONOBI, alfano, and juvon worked in concert to illegally set up a loan that should not have been approved. the true purpose of the loan was to generate fees, commissions and expenses payable to Defendants out of Plaintiff's refinance and alleged investment.

203.    Defendant ALFANO advised Plaintiff that he could get him 100% financing for their loan. However, Defendant ALFANO actually sold Plaintiff a predatory loan. the loan, in the amount of $450,000.00, carried a teaser rate of 1.25%, that adjusted to 12.950% interest rate, based on MTA index plus 2.75%. Plaintiff's loan was negatively amortized 120.00% and also carried a prepayment penalty. Plaintiff' initial monthly payments for the loan was $1,499.63. Plaintiff's fully amortized payment was $4,365.19.

204.    As a result of Defendants' wrongful conduct, Plaintiff has suffered various damages and injuries according to proof at trial.

205.    Plaintiff seeks injunctive relief enjoining Defendants from engaging in the unfair business practices described herein.

206.    Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF CIVIL CODE § 2923.5 et seq.**

**(Against Defendants AHMSI, T.D., AHMSIDS, DEUTSCHE, and MERS)**

207.     Plaintiff incorporates here each and every allegation set forth above.

208.     California Commercial Code § 3301 and California Civil Code § 2924 specifically identify the persons who are entitled to enforce a security interest by, among other means, instituting a non-judicial foreclosure sale under a deed of trust.  The statute is exclusive rather than inclusive in nature, and those who are not identified do not have the right to enforce such an interest.

209.     Defendants AHMSI, MERS, T.D., AHMSIDS, and DEUTSCHE were not, and are not, in possession of the Note, are not beneficiaries, mortgagees, trustees, assignees or agents of the person or entity in possession of the Note or entitled to enforce the terms of the note, and are not otherwise entitled to payment.  Defendants AHMSI, MERS, T.D., AHMSIDS, and DEUTSCHE are not "person[s] entitled to enforce" the security interest on the Property, as that term is defined in Commercial Code § 3301 and California Civil Code § 2924.

210.     Accordingly, Defendants AHMSI, MERS, T.D., AHMSIDS, and DEUTSCHE are not entitled to utilize California Civil Code § 2924 et seq. (California's non-judicial foreclosure scheme) to wrongfully convert Plaintiff's Property.

211.     In the Notice of Trustee Sale, Defendants T.D., AHMSIDS, and DEUTSCHE claims that it was the duly appointed Trustee pursuant to the Deed of Trust but fails to identify the holder of the beneficial interest.  None of the Defendants are not in possession of the Note and, accordingly, none are not entitled to enforce the security interest on the Property.

212.     Said Defendants also failed to give proper notice of the Notice of Default, which apparently recorded on or about June 23, 2009.  Said failures are in direct violation of the notice and recording requirements set forth in California Civil Code § 2923.5.  As a result, Plaintiff was not properly informed regarding a pending substitution of trustee, and consequently could not exercise his rights to investigate the circumstances of the foreclosure proceedings.

213.     In the instant action, Plaintiff sent a QWR to Defendant AHMSI, demanding the

identity of the current holder of the Mortgage Note that is the subject of this action, but to date, Plaintiff have not received a proper response.

214.   Said Defendants' failure to comply with the statutory requirements denied Plaintiff the opportunity to exercise his statutory rights, which the statute was specifically designed to protect.

215.   WHEREFORE, Plaintiff prays for judgment determining that Defendants AHMSI, T.D., AHMSIDS, DEUTSCHE, and MERS claims are without any right whatever and such Defendants have no right, title, estate, lien, or interest whatever in the above-described property or any part thereof.

216.   Plaintiff further prays for a permanent injunction, enjoining AHMSI, T.D., AHMSIDS, DEUTSCHE, and MERS from foreclosing on Plaintiff's Property.

217.   Further, as a result Plaintiff was harmed and suffered damages including, but not limited to, loss of property, incurred attorneys' fees and costs to recover the Property, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression.

218.   Defendants are guilty of malice, fraud and/or oppression, as defined in California Civil Code § 3294.  Defendants' actions were malicious and willful, in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff.  As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

219.   Defendants AHMSI, T.D., AHMSIDS, and DEUTSCHE's officers, directors and/or managing agents failed to adequately supervise, train and direct its employees, and employing them with conscious disregard for the safety of Plaintiff and thereafter ratified the conduct of its employees.

220.   Defendants AHMSI, T.D., AHMSIDS, and DEUTSCHE implemented policies and procedures which permitted and encouraged the conduct of its employees and agents in this case and as such said Defendant consented, acquiesced, approved and ratified the behavior and conduct of its employees, including Does 1 through 20, and each of them in causing harm to Plaintiff.

221.    Accordingly, Plaintiff is entitled to recover punitive damages from Defendants pursuant to California Civil Code § 3294, in an amount according to proof.

**NINTH CAUSE OF ACTION**

**QUIET TITLE**

**(Against Defendants AHMSI, T.D., AHMSIDS, DEUTSCHE, and MERS)**

222.    Plaintiff incorporates here each and every allegation set forth above.

223.    The legal description of Plaintiff's property is:

> The land referred to is situated in the County of Placer, City of Newcastle, State of California, and is described as follows:
> PARCEL ONE:
> That portion of the East half of Section 12, Township 12 North, Range 7 East, M.D.M., included within the land shown and designated as Parcel "A", on Parcel Map No. 73748, filed for record in the office of the Recorder of Placer County, California on October 30, 1980 in Book 17 of Parcel Maps, at page 74, Placer County Records.
> PARCEL TWO:
> A non-exclusive easement for road, drainage and utility purposes over, under and across a portion of the East half of Section 12, Township 12 North, Range 7 East, M.D.M., included within the land shown and designated as Area "K" of Parcel Map No. 72661, filed in the office of the Placer County Recorder on March 29, 1979, in Book 14 of Parcel Maps, at page 58.
> APN: 031-080-075

224.    The address of Plaintiff's Property is 795 Quartz Mine Road, New Castle, County of Placer, State of California.

225.    The Defendants AHMSI, T.D., AHMSIDS, DEUTSCHE, and MERS claim a legal or equitable right, title, estate, lien, or interest in the property described in the Complaint, adverse to Plaintiff's title, or have placed a cloud on Plaintiff's title.

226.    Plaintiff's is the sole owner of the real property and respectfully request this Courtdetermine that Defendants AHMSI, T.D., AHMSIDS, DEUTSCHE, and MERS have no interest in the Property.

227.    WHEREFORE, Plaintiff prays for judgment determining that Defendants AHMSI, T.D., AHMSIDS, DEUTSCHE, and MERS claims are without any right whatever and such Defendants have no right, title, estate, lien, or interest whatever in the above-described property or any part thereof.

**DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

Plaintiff CRAIG OHLENDORF demands a trial by jury.

WHEREFORE, Plaintiff prays for judgment and order against Defendants, as follows:

1.   That judgment be entered in Plaintiff's favor and against Defendants, and each of them;

2.   For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

3.   For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them, from collecting on the subject Loan and from causing the Property to be sold, assigned or transferred to a third party;

4.   For an order stating that Defendants engaged in unfair business practices;

5.   For damages, disgorgement, and injunctive relief under California's common and statutory law of unfair business practices;

///
///
///
///
///
///
///
///
///
///
///
///
///
///

**SECOND AMENDED COMPLAINT**

6.      For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;

7.      For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;

8.      For a judgment determining that Defendants AHMSI, T.D., AHMSIDS, DEUTSCHE, and MERS title claims to Plaintiff's Property are without any right whatever and such Defendants have no right, title, estate, lien, or interest whatever in the above-described property or any part thereof;

9.      For such other and further relief as the Court may deem just and proper.


DATED: April 15, 2010

                                        Respectfully submitted


                                        /S/   Timothy Smithwick_____
                                        TIMOTHY SMITHWICK
                                        Attorney for Plaintiff CRAIG OHLENDORF

**SECOND AMENDED COMPLAINT**

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA     )
                                  )ss.
COUNTY OF SACRAMENTO )

      I am a citizen of the United States and a resident of the County of Sacramento.  I am over the age of 18 years and not a party to the within above-entitled action; my business address is 2882 Prospect Park Dr, Ste 350, Rancho Cordova, California, 95670

      On this date I served the foregoing document described as follows: **SECOND AMENDED COMPLAINT** on the following interested parties in this action:

SEE ATTACHED SERVICE LIST

      The following is the procedure in which service of this document was effected:

❏     Facsimile, Time: _____ P.M.; Date:

❏     Federal Express, Priority Overnight

❏     United Parcel Service, Next Day Air

❏     United States Mail,

✓     By Electronic Mail - I hereby certify that I electronically transmitted the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the above listed CM/ECF registrants.

      I declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California and that this declaration was executed on April 28, 2010 at Sacramento, California.

                              /s/ Teresa Miller
                              TERESA MILLER

**SECOND AMENDED COMPLAINT**

1

## SERVICE LIST

2

3   **T. Robert Finlay**                          Representing
    Wright, Finlay & Zak, LLP
4   4665 MacArthur Court, Suite 280              Defendant AHMSI DEFAULT SERVICES,
    Newport Beach, CA 92660                      INC.
    949-477-5050
5   (fax) 949-477-9200                           Defendant AMERICAN HOME
    Email: rfinlay@wrightlegal.net               MORTGAGE SERVICING

6

7                                                Defendant MORTGAGE ELECTRONIC
                                                 REGISTRATION SYSTEMS, INC.

8                                                Defendant Deutsche Bank National Trust
                                                 Company As Trustee for Harborview
9                                                Morgage Loan Trust Mortgage Loan Pass-
                                                 through Certificates, Series 2007-5

10

11  Lawrence J. Dreyfuss                         Representing
    The Dreyfuss Firm, Plc
12  7700 Irvine Center Drive, Suite 710          Defendant T.D. SERVICE COMPANY
    Irvine, CA 92618
13  949-727-0977
    Fax: 949-450-0668
14  Email: roma@dreyfusslaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND AMENDED COMPLAINT**